Tionna Dolin (SBN 299010)
Email: tdolin@slpattorney.com
Daniel Law (SBN 308855)
Email: dlaw@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
**A PROFESSIONAL CORPORATION**
1888 Century Park East, Floor 19
Los Angeles, CA 90067
Telephone: (310) 929-4900
Facsimile:  (310) 943-3838

Attorneys for Plaintiff HUMBERTO SALAS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUMBERTO SALAS, <br><br>         Plaintiff, <br><br>    vs. <br><br> FORD MOTOR COMPANY; and DOES 1 through 10, inclusive, <br><br>         Defendants. | Case No.: 2:22-cv-02201-AB-PLA <br><br> Judge: Hon. Andre Birotte, Jr. <br> Magistrate: Hon. Paul L. Abrams <br><br> **FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS** <br><br> JURY TRIAL DEMANDED |

STRATEGIC LEGAL PRACTICES, APC
1888 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

Plaintiff alleges as follows:

### PARTIES

1.    As used in this Complaint, the word "Plaintiff" shall refer to Plaintiff HUMBERTO SALAS.

2.    Plaintiff is a resident of California.

3.    As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint, unless otherwise specified.

4.    Defendant FORD MOTOR COMPANY ("Defendant FMC") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. Defendant's principal place of business is in the State of Michigan. At all times relevant herein, Defendant was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in the Los Angeles County, California.

5.    Plaintiff is ignorant of the true names and capacities of the Defendants sued under the fictitious names DOES 1 to 10. They are sued pursuant to Code of Civil Procedure section 474.  When Plaintiff become aware of the true names and capacities of the Defendants sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and capacities.

### TOLLING OF THE STATUTES OF LIMITATION

6.    To the extent there are any statutes of limitation applicable to Plaintiff's claim—including, without limitation, his express warranty, implied warranty, and fraudulent omission claims—the running of the limitation periods have been tolled by *inter alia*, the following doctrines or rules: equitable tolling, the discovery rule, the fraudulent concealment rules, equitable estoppel, the repair rule, and/ or class action tolling (e.g. the American Pipe rule).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

7.    Plaintiff discovered Defendant's wrongful conduct alleged herein shortly before the initial filing of the complaint, as the Vehicle continued to exhibit symptoms of defects following FMC's unsuccessful attempts to repair them. However, FMC failed to provide restitution pursuant to the Song – Beverly Consumer Warranty Act.

## FACTUAL BACKGROUND

8.    On or about March 31, 2017, Plaintiff purchased a 2017 Ford F-150, vehicle identification number 1FTEW1CG2HKD18821 (hereinafter "Vehicle"), which was manufactured and or distributed by Defendant FMC[1].

9.    The Vehicle was purchased or used primarily for personal, family, or household purposes.  Plaintiff purchased the Vehicle from a person or entity engaged in the business of manufacturing, distributing, or selling consumer goods at retail.

10.    Plaintiff received various warranties, inter alia, a 3-year/36,000 mile express bumper to bumper warranty, a 5-year/60,000 mile powertrain warranty which, inter alia, covers the engine and the transmission, as well as various emissions warranties that exceed the time and mileage limitations of the bumper to bumper and powertrain warranties. Defendants undertook to preserve or

---

[1] Plaintiff is further informed, believes, and thereon alleges that Defendant distributes (and at all relevant times herein distributed) the motor vehicles it manufactures for sale to certain dealerships. Said dealerships, including the dealership which Plaintiff purchased the Vehicle from, have purchased a license from Defendant to utilize, display, and profit from Defendant's branding and trademarks. By distributing Defendant's vehicles to such dealerships, including the Vehicle, and thus placing Defendant's vehicles into the stream of commerce for purchase and/or lease by consumers like Plaintiff, Defendant had a duty to disclose the existence, nature, and scope of the latent, material engine safety defect to Plaintiff as herein described. *See OCM Principle Opportunities Fund v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 859-860 (under California law, a vendor has a duty to disclose material facts, not only to immediate purchasers or lessees, but also to subsequent purchasers or lessees when the vendor has reason to expect that the item will be resold). *See, also, Barnhouse v. City of Pinole* (1982) 133 Cal.App.3d 171, 191-193 ("an action for deceit does not require privity of contract").

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Subject Vehicle would be repaired. A true and correct copy of Defendant FMC's warranty booklet is attached hereto as **Exhibit A.**

11.     Plaintiff subsequently received multiple warranty extensions to various component parts due to Defendant's numerous Customer Satisfaction Programs, including 19N02, 21N03, 18N03, 21B10, and 21M06.

12.     Plaintiff further received a Ford Extended Warranty Plan for a term of 60 months/125,000 miles.

13.     Plaintiff justifiably revokes acceptance of the Subject Vehicle under Civil ode, section 1794, et seq. by filing this Complaint and/or did prior to filing the instant Complaint.

14.     These causes of action arise out of the warranty obligations of Defendant FMC in connection with a motor vehicle for which Defendant FMC issued a written warranty

15.     During the warranty period, the Vehicle contained or developed defects, including but not limited to, defects related to the transmission; defects related to the engine; defects causing function to be inoperable through the screen and/or through the steering wheel; defects causing the failure and/or replacement of the APIM module; defects causing the Bluetooth to fail to connect; defects requiring the updating and/or reprogramming of the APIM and/or powertrain control module ("PCM"); defects causing the engine to rattle; defects causing the SYNC system to be inoperable; defects causing the storage of Diagnostic Trouble Code ("DTC") U3003 and/or P0022; defects requiring the

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

3

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

performance of Recall 18S27; defects causing the illumination of the check engine light ("CEL"); defects causing a failure to start; defects requiring the performance of Technical Service Bulletin ("TSB") 48-445 and/or 20-2051; defects causing the failure and/or replacement of the VCT phasers; defects causing delay upon acceleration; defects causing oil to leak; defects causing the failure and/or replacement of the oil pan; defects causing the failure and/or replacement of the radiator; defects causing a metallic sound; defects causing the failure and/or replacement of the starter and/or flywheel; defects causing a failure to shift; defects causing erratic shifting; defects causing harsh shifting; defects causing the failure and/or replacement of the transmission;  and/or any other defects described in the Vehicle's repair history.

16.     Said defects/nonconformities substantially impair the use, value, or safety of the Vehicle.

**Relevant Portions of the Subject Vehicle's Repair History**

17.     The following is a brief summary of relevant portions of the Subject Vehicle's repair history.

18.     On or about July 25, 2018, with approximately 48,819 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility with concerns relating to malfunctioning Bluetooth connectivity, inoperable functions from display and steering wheel, and the engine rattling on cold starts. Defendant's technician inspected the Vehicle and verified Plaintiff's concerns and performed warranty repairs, including resetting, disconnecting, and reprogramming the APIM module. The vehicle was at the repair facility for a total of three (3) days. At pick up, Defendant's technicians advised the Vehicle was working as designed.

19.     On or about August 13, 2018, with approximately 50,535 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized

repair facility with ongoing concerns related to malfunctioning Bluetooth connectivity, display functions unresponsive, and overall inoperable SYNC (display) system. Defendant's technician inspected the Vehicle and again, verified Plaintiff's concerns. Defendant's technicians performed warranty repairs, including resetting, disconnecting, and reprogramming the APIM module. The Vehicle was at the repair facility for a total of six (6) days. At pick up, Defendant's technicians advised the Vehicle was working as designed.

20. On or about July 11, 2019, with approximately 80,995 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility with ongoing concerns relating to engine rattling upon cold start. Plaintiff was advised to bring come back later for further diagnosis. The Vehicle was at the repair facility for one (1) day.

21. On or about June 2, 2020, with approximately 109,115 miles on the odometer, Plaintiff presented the Subject Vehicle to Defendant's authorized repair facility with ongoing concerns relating to a check engine light, engine rattling upon cold start, delayed shifting upon acceleration. Defendant's technician inspected the Vehicle and verified Plaintiff's concerns, and further found an oil leak. Defendant's technicians performed warranty repairs, including replacing all CVT phasers and updating the PCM, draining all fluid, fixing the oil leak, and replacing component hardware, gaskets, seals, bolts, and fasteners. The Vehicle was at the repair facility for a total of twenty-five (25) days. At pick up, Defendant's technicians advised the Vehicle was working as designed.

22. Thereafter, Plaintiff continued to experience symptoms of the Subject Vehicle's defects despite Defendant's representations that the Subject Vehicle was repaired.

23. Plaintiff suffered damages in a sum to be proven at trial in an amount that is not less than $25,001.00.

5

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

## Defendant FMC Had Superior and/or Exclusive Knowledge of the Transmission Defect

24.    Prior to Plaintiff purchasing the Vehicle, Defendant FMC knew that vehicles equipped with the same 10R80 transmission as the Vehicle suffered from one or more defects that can cause the vehicles and their 10R80 transmissions to experience hesitation and/or delayed acceleration; harsh and/or hard shifting; jerking, shuddering, and/or juddering ("Transmission Defect").

25.    Plaintiff is informed and believes, and thereon alleges, that Defendant acquired this knowledge prior to Plaintiff purchasing the Vehicle through various sources of information, including but not limited to pre-production testing, pre-production design failure mode and analysis data, production failure mode and analysis data, early consumer complaints made exclusively to Ford's network of dealers and directly to Ford, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to consumer complaints, and repair order and parts data received by Ford from Ford's network of dealers.

26.    As a result of this internal knowledge and investigations, Defendant FMC subsequently issued technical service bulletins ("TSBs") concerning the Transmission Defect.

27.    For example, on or about March 2, 2018, Defendant FMC issued TSB 18-2079, entitled "10R80 Automatic Transmission – Harsh or Delayed Shift Concerns And/Or Illuminated MIL – DTC P0711 – Built On or Before 1-Aug-2017," which covers 2017 F-150 vehicles equipped with a 10R80 automatic transmission (the same type of transmission in the Subject Vehicle).[2] According

---

[2] Even documents issued **after** the sale of the Vehicle can demonstrate Defendant FMC's **pre-sale** knowledge of the Transmission Defect, because those subsequent documents are preceded by an "accretion of knowledge." *See Wildin v. FCA US LLC*, 2018 WL 3032986, at **4-5 (S.D. Cal. June 19, 2018).

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

to the TSB, "[s]ome 2017 F-150/Raptor vehicles equipped with a 10R80 automatic transmission built on or before 1-Aug-2017 may exhibit harsh or delayed shifts and/or an illuminated malfunction indicator lamp (MIL) with diagnostic trouble code (DTC) P0711 stored in the transmission control module (TCM)."

**TECHNICAL SERVICE BULLETIN**        18-2079
**10R80 Automatic Transmission – Harsh Or Delayed Shift Concerns**
**And/Or Illuminated MIL - DTC P0711 - Built On Or Before 1-Aug-2017**    02 March 2018

**Model:**

Ford
2017 F-150

**Issue:** Some 2017 F-150/Raptor vehicles equipped with a 10R80 automatic transmission built on or before 1-Aug-2017 may exhibit harsh or delayed shifts and/or an illuminated malfunction indicator lamp (MIL) with diagnostic trouble code (DTC) P0711 stored in the transmission control module (TCM).

**Action:** Reprogram the powertrain control module (PCM) using Integrated Diagnostic System (IDS) or Ford J2534 Diagnostic Software (FJDS) release 108.04 or higher. Make sure you are connected to the internet when entering module programming to obtain the latest updates. Calibration files may also be obtained at www.motorcraftservice.com.

**Warranty Status:** Eligible Under Provisions Of New Vehicle Limited Warranty Coverage And Emissions Warranty Coverage Warranty/ESP coverage limits/policies/prior approvals are not altered by a TSB. Warranty/ESP coverage limits are determined by the identified causal part and verified using the OASIS part coverage tool.

**Labor Times**

| Description | Operation No. | Time |
|---|---|---|
| 2017 F-150 3.5L GTDI: Retrieve DTCs And Reprogram The PCM (Do Not Use With Any Other Labor Operations) | 182079A | 0.3 Hrs. |

**Repair/Claim Coding**

| | |
|---|---|
| Causal Part: | RECALEM |
| Condition Code: | 04 |

**Service Procedure**

NOTE: ADVISE THE CUSTOMER THAT THIS VEHICLE IS EQUIPPED WITH AN ADAPTIVE TRANSMISSION SHIFT STRATEGY WHICH ALLOWS THE VEHICLE'S COMPUTER TO LEARN THE TRANSMISSION'S UNIQUE PARAMETERS AND IMPROVE SHIFT QUALITY. WHEN THE ADAPTIVE STRATEGY IS RESET, THE COMPUTER WILL BEGIN A RE-LEARNING PROCESS. THIS RE-LEARNING PROCESS MAY RESULT IN FIRMER THAN NORMAL UPSHIFTS AND DOWNSHIFTS FOR SEVERAL DAYS.

28.     In TSB 18-2079, Defendant FMC attributed the transmission issues to problems with the vehicles' powertrain control module ("PCM")—specifically, to problems with the vehicles' "adaptive transmission shift strategy which allows the vehicle's computer to learn the transmission's unique parameters and improve shift quality."

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

29.    Then, on or about September 7, 2018, Defendant FMC issued TSB 18-2274, entitled "2.7L/3.5L/5.0L Engine And 10R80 Transmission - Harsh/Bumpy Shift And/Or Engagement Concerns - Built On Or Before 15-May-2018[,]" which covers 2018 F-150 vehicles. According to the TSB, "[s]ome 2018 F-150 vehicles equipped with a 2.7L, 3.5L or 5.0L engine and 10R80 automatic transmission and built on or before 15-May 2018 may exhibit harsh/bumpy upshift, downshift and/or engagement concerns. Follow the Service

**TECHNICAL SERVICE BULLETIN**
**2.7L/3.5L/5.0L Engine And 10R80 Transmission - Harsh/Bumpy Shift And/Or Engagement Concerns - Built On Or Before 15-May-2018**

**18-2274**
07 September 2018

**Model:**

Ford
2018 F-150

**Issue:** Some 2018 F-150 vehicles equipped with a 2.7L, 3.5L or 5.0L engine and 10R80 automatic transmission and built on or before 15-May 2018 may exhibit harsh/bumpy upshift, downshift and/or engagement concerns.

**Action:** Follow the Service Procedure steps to correct the condition.

**Warranty Status:** Eligible Under Provisions Of New Vehicle Limited Warranty Coverage Warranty/ESP coverage limits/policies/prior approvals are not altered by a TSB. Warranty/ESP coverage limits are determined by the identified causal part and verified using the OASIS part coverage tool.

**Labor Times**

| Description | Operation No. | Time |
|---|---|---|
| 2018 F-150 2.7L/3.5L/5.0L: Reprogram The PCM (Do Not Use With Any Other Labor Operations) | 182274A | 0.3 Hrs. |

**Repair/Claim Coding**

| | |
|---|---|
| Causal Part: | RECAL |
| Condition Code: | 04 |

**Service Procedure**

1. Check the vehicle build date. Was the vehicle built on or before 15-May-2018?

    (1). Yes - reprogram the powertrain control module (PCM) using the latest version of the appropriate Ford scan tool.

    • NOTE: ADVISE THE CUSTOMER THAT THIS VEHICLE IS EQUIPPED WITH AN ADAPTIVE TRANSMISSION SHIFT STRATEGY WHICH ALLOWS THE VEHICLE'S COMPUTER TO LEARN THE TRANSMISSION'S UNIQUE PARAMETERS AND IMPROVE SHIFT QUALITY. WHEN THE ADAPTIVE STRATEGY IS RESET, THE COMPUTER WILL BEGIN A RE-LEARNING PROCESS. THIS RE-LEARNING PROCESS MAY RESULT IN FIRMER THAN NORMAL UPSHIFTS AND DOWNSHIFTS FOR SEVERAL DAYS.

    (2). No - this article does not apply. Refer to Workshop Manual (WSM), Section 307-01 for normal diagnostics.

30.    Like TSB 18-2079, TSB 18-02274 attributed the transmission issues to problems with the vehicles' PCM – specifically, to problems with the vehicles' "adaptive transmission."

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

8

31.     Then, on September 27, 2021, Defendant issued TSB 21-2315, entitled "10R80 – Harsh Engagement/Harsh Shift/Delayed Shift With or Without DTCs", which covers **2017 – 2020 F-150s**, including the Subject Vehicle. The TSB advised that "Some 2017-20220 F-150 … vehicles equipped with a 10R80 automatic transmission may exhibit a harsh engagement/harsh shift/delayed shift…This may be due to incompatibility of the adaptive calibration to adapt to hardware wear-in over time. To correct the condition, follow the Service Procedure steps to overhaul the main control valve body and/or perform an adaptive learning drive cycle."

## 10R80 - Harsh Engagement/Harsh Shift/Delayed Shift With Or Without DTCs

Vehicle › Technical Service Bulletins › 10R80 - Harsh Engagement/Harsh Shift/Delayed Shift With Or Without DTCs

10R80 - HARSH ENGAGEMENT/HARSH SHIFT/DELAYED SHIFT WITH OR WITHOUT DTCS

TECHNICAL SERVICE BULLETIN                                                                          21-2315
10R80 - Harsh Engagement/Harsh Shift/Delayed Shift Or Without DTCs                        27 September 2021

Model:

| Ford | Transmission/Transaxle: (10R80) |
| --- | --- |
| 2018-2021 Expedition | |
| 2017-2020 F-150 | Transmission/Transaxle: (10R80) |
| 2018-2021 Mustang | Transmission/Transaxle: (10R80) |
| 2019-2021 Ranger | Transmission/Transaxle: (10R80) |
| Lincoln | Transmission/Transaxle: (10R80) |
| 2018-2021 Navigator | |

**Issue:** Some 2017-2020 F-150, 2018-2021 Expedition/Navigator/Mustang and 2019-2021 Ranger vehicles equipped with a 10R80 automatic transmission may exhibit a harsh engagement/harsh shift/delayed shift. It is possible the vehicle may also have an illuminated malfunction indicator lamp (MIL) or diagnostic trouble codes (DTC) P0751, P0752, P0756, P0757, P0761, P0762, P0766, P0767, P0771, P0772, P2700, P2701, P2702, P2703, P2704, P2705, P2707, P2708, P0729, P0731, P0732, P0733, P0734, P0735, P0736, P0736F, P07D9, P07F6 and/or P07F7 stored in the powertrain control module (PCM) or transmission control module (TCM). This may be due to incompatibility of the adaptive calibration to adapt to hardware wear-in over time. To correct the condition, follow the Service Procedure steps to overhaul the main control valve body and/or perform an adaptive learning drive cycle.

**Action:** Follow the Service Procedure steps to correct the condition on vehicles that meet all of the following criteria:

• One of the following vehicles:
   - 2017-2020 F-150
   - 2018-2021 Expedition/Navigator/Mustang
   - 2019-2021 Ranger
• 10R80 automatic transmission

• At least one of the following symptoms:
   - Harsh engagement
   - Harsh shift
   - Delayed shift

NOTE: Part quantity refers to the number of that service part number required, which may be different than the number of individual pieces. Service part numbers contain 1 piece unless otherwise stated. "As Needed" indicates the part is required but the quantity may vary or is not a whole number; parts can be billed out as non-whole numbers, including less than 1. "If Needed" indicates the part is not mandatory.

32.     Like TSBs 18-2079 and 18-02274, TSB 21-2315 attributed the transmission issues to similar "adaptive calibration" shift learning issues and the 10R80 Transmission.

33.     Plaintiff is a reasonable consumer who interacted with Defendant's

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

sales representatives and reviewed Defendant's marketing materials during the sales process, but the safety-related Transmission Defect was never disclosed to Plaintiff prior to purchase.

34.    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had Plaintiff known of the Transmission Defect, given the unsafe nature of the Defect. Furthermore, Plaintiff unknowingly exposed themselves to the risk of accident, injury, and/or liability to others as a result of the nature or the Transmission Defect, which can lead to hesitation, loss of power, and other shifting issues while driving at highway speeds. Plaintiff is a reasonable consumer who expected the Subject Vehicle to be safe and free of defects, and that Defendant FMC would not sell or lease vehicles with known safety-related defects, such as the Transmission Defect, and would disclose any such defects to its consumers when it learns of them.

35.    Although it has been fully aware of the Transmission Defect, Defendant FMC actively concealed the existence and nature of the Defect from Plaintiff at the time of purchase, repair, and thereafter.

### FIRST CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT FMC

### VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2

36.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

37.    Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities.  Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2).

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

38.    Plaintiff have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1, subdivision (a)(2), and therefore bring this cause of action pursuant to Civil Code section 1794.

39.    Plaintiff suffered damages in a sum to be proven at trial in an amount not less than $25,001.00.

40.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution.  Accordingly, Plaintiff are entitled to a civil penalty of two times Plaintiff' actual damages pursuant to Civil Code section 1794, subdivision (c).

41.    Defendant does not maintain a qualified third-party dispute resolution process which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff are entitled to a civil penalty of two times Plaintiff' actual damages pursuant to Civil Code section 1794, subdivision (e).

42.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e) in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section 1794, subdivision (f).

**SECOND CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FMC**

**VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

43.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

44.    Although Plaintiff presented the Vehicle to Defendant's representative in this state, Defendant and its representative failed to commence the service or repairs within a reasonable time and failed to service or repair the Vehicle so as to conform to the applicable warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b).  Plaintiff did not extend the time for completion of repairs beyond the 30-day requirement.

45.    Plaintiff have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(b), and therefore bring this Cause of Action pursuant to Civil Code section 1794.

46.    Plaintiff have rightfully rejected and/or justifiably revoked acceptance of the Vehicle and have exercised a right to cancel the purchase.  By serving this Complaint, Plaintiff do so again.  Accordingly, Plaintiff seek the remedies provided in California Civil Code section 1794(b)(1), including the entire contract price.  In the alternative, Plaintiff seek the remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value of the Vehicle resulting from its defects.  Plaintiff believes that, at the present time, the Vehicle's value is *de minimis*.

**47.**    Defendant's failure to comply with its obligations under Civil Code section 1793.2(b) was willful, in that Defendant and its representative were aware that they were obligated to service or repair the Vehicle to conform to the applicable express warranties within 30 days, yet they failed to do so. Accordingly, Plaintiff are entitled to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c).

### THIRD CAUSE OF ACTION
### BY PLAINTIFF AGAINST DEFENDANT FMC
### VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

48.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

49.    In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to make available to its authorized service and repair facilities sufficient service literature and replacement parts to effect repairs during the express warranty period.  Plaintiff have been damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section 1793.2(a)(3), and therefore bring this Cause of Action pursuant to Civil Code section 1794.

50.    Defendant's failure to comply with its obligations under Civil Code section 1793.2, subdivision (a)(3) was willful, in that Defendant knew of its obligation to provide literature and replacement parts sufficient to allow its repair facilities to effect repairs during the warranty period, yet Defendant failed to take any action to correct its failure to comply with the law. Accordingly, Plaintiff are entitled to a civil penalty of two times Plaintiff actual damages pursuant to Civil Code section 1794(c).

**FOURTH CAUSE OF ACTION**

**BY PLAINTIFF AGAINST DEFENDANT FMC**

**BREACH OF EXPRESS WRITTEN WARRANTY**

**(CIV. CODE, § 1791.2, SUBD. (a); § 1794)**

51.    Plaintiff incorporates by reference the allegations contained in paragraphs set forth above.

52.    In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time.  Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects.  However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

53.    Plaintiff have been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore bring this Cause of Action pursuant to Civil Code section 1794.

54.    Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so.  Accordingly, Plaintiff are entitled to a civil penalty of two times of Plaintiff' actual damages pursuant to Civil Code section 1794(c).

## FIFTH CAUSE OF ACTION
## BY PLAINTIFF AGAINST DEFENDANT FMC
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
## (CIV. CODE, § 1791.1; § 1794; § 1795.5)

55.    Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

56.    Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied by Defendant's implied warranty of merchantability.  Pursuant to Civil Code section 1791.1, the duration of the implied warranty is coextensive in duration with the duration of the express written warranty provided by Defendant, except that the duration is not to exceed one-year.

57.    Pursuant to Civil Code section 1791.1 (a), the implied warranty of merchantability means and includes that the Vehicle will comply with each of the following requirements:  (1) The Vehicle will pass without objection in the trade under the contract description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3) The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to the promises or affirmations of fact made on the container or label.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

14

58.     The Vehicle contained or developed the defects set forth above. The existence of each of these defects constitutes a breach of the implied warranty because the Vehicle (1) does not pass without objection in the trade under the contract description, (2) is not fit for the ordinary purposes for which such goods are used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the promises or affirmations of fact made on the container or label.

59.     Plaintiff has been damaged by Defendant's failure to comply with its obligations under the implied warranty, and therefore bring this Cause of Action pursuant to Civil Code section 1794.

## SIXTH CAUSE OF ACTION
### BY PLAINTIFF AGAINST DEFENDANT FMC
### (Fraudulent Inducement - Concealment)

60.     Plaintiff incorporates by reference the allegations contained in the paragraphs set forth above.

61.     Plaintiff purchased the Vehicle as manufactured with Defendant's 10R80 10 Speed automatic transmission.

62.     DEFENDANT FMC committed fraud by allowing the Subject Vehicle to be sold to Plaintiff without disclosing that the Subject Vehicle and its transmission was defective and susceptible to sudden and premature failure.

63.     In particular, the Plaintiff is informed, believes and thereon alleges that prior to Plaintiff acquiring the Vehicle, FMC was well aware and knew that the transmission installed in the Vehicle was defective but failed to disclose this fact to the plaintiff at the time of the sale and thereafter.

64.     Specifically, FMC knew (or should have known) that vehicles equipped with the same 10R80 transmission as the Subject Vehicle suffered from one or more defects that can result in various problems, including, but not limited

15

to slipping of the transmission, hesitation on acceleration, improper transmission engagement and/ or harsh and/or hard shifts ("Transmission Defects"). These conditions present a safety hazard and are unreasonably dangerous to consumers because they can suddenly and unexpectedly affect the driver's ability to control the vehicle's speed, acceleration, deceleration, and/ or overall responsiveness of the vehicle in various driving conditions.

65.    Plaintiff is informed, believes and thereon alleges that FMC acquired its knowledge of the Transmission Defect prior to Plaintiff acquiring the Subject Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production and post-production testing data, early consumer complaints about the transmission defect made directly to FMC and its network of dealers, aggregate warranty data compiled from FMC's network of dealers, testing conducted by FMC in response to these complaints, as well warranty repair and part replacements data received by FMC from FMC's network of dealers, amongst other sources of internal information.

66.    Plaintiff is informed, believes, and thereon alleges that while Defendant knew about the Transmission Defect, and its safety risks since prior to Plaintiff's purchase of the Vehicle, if not before, Defendant nevertheless concealed and failed to disclose the defective nature of the Vehicle and its transmission to Plaintiff at the time of sale, repair, and thereafter. Had Plaintiff known that the Subject Vehicle suffered from the Transmission Defect, he would not have purchased the Subject Vehicle.

67.    Indeed, Plaintiff alleges that Defendant knew that the Vehicle and its transmission suffered from an inherent defect, was defective, would fail prematurely, and was not suitable for its intended use.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

68.    DEFENDANT FMC was under a duty to Plaintiff to disclose the defective nature of the Subject Vehicle and its transmission, its safety consequences and/or the associated repair costs because:

a.    DEFENDANT FMC acquired its knowledge of the Transmission Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, through sources not available to consumers such as Plaintiff, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defect made directly to DEFENDANT FMC and its network of dealers, aggregate warranty data compiled from DEFENDANT FMC's network of dealers, testing conducted by DEFENDANT FMC in response to these complaints, as well as warranty repair and part replacements data received by DEFENDANT FMC from DEFENDANT FMC's network of dealers, amongst other sources of internal information;

b.    DEFENDANT FMC was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicle equipped with the defective transmission; and;

c.    As early as January 19, 2018, consumers have been complaining to NHTSA regarding symptoms of the Transmission Defect in 2018 Ford F-150 vehicles;[3] and

d.    Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defect and its

---

[3] *See,* https://www.nhtsa.gov/vehicle/2018/FORD/F-150%252520SUPER%252520CREW/PU%25252FCC/4x2#complaints (last visited May 13, 2021).

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

1    potential consequences until well after Plaintiff purchased the

2    Vehicle.

3       69.    In failing to disclose the defects in the Vehicle's transmission,

4    DEFENDANT FMC has knowingly and intentionally concealed material facts and

5    breached its duty not to do so.

6       70.    The facts concealed or not disclosed by DEFENDANT FMC to

7    Plaintiff is material in that a reasonable person would have considered them to be

8    important in deciding whether or not to purchase the Subject Vehicle. Had

9    Plaintiff known that the Subject Vehicle and its transmissions were defective at

10   the time of sale, he would not have purchased the Subject Vehicle.

11      71.    Plaintiff is a reasonable consumer who reviewed television

12   commercials, brochures, and other advertising materials directly draft and

13   approved by Defendant, such as the Monroney Sticker, or window-sticker

14   containing information about the Vehicle, but none of these communications

15   disclosed existence of the Transmission Defect.

16      72.    Plaintiff is a reasonable consumer who does not expect his

17   transmission to fail and do not properly. Plaintiff further expects and assumes

18   that Defendant FMC will not sell or lease vehicles with know material defect,

19   including but not limited to those involving the vehicle's transmission and will

20   disclose any sch defect to it's consumer before selling such vehicle.

21      73.    Plaintiff only became suspicious that the Vehicle suffered from the

22   transmission defect after presenting the Vehicle to defendant for a reasonable

23   number of repair attempt to no avail.

24      74.    As a result of DEFENDANT FMC's misconduct, Plaintiff has

25   suffered and will continue to suffer actual damages.

26      75.    Plaintiff was harmed by purchasing a vehicle that Plaintiff would

27   not have leased and/or purchased had Plaintiff known the true facts about the

28

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

18

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS; JURY TRIAL DEMANDED**

Transmission Defect. Furthermore, Plaintiff unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Transmission Defect.

76.    Plaintiff was harmed by purchasing a vehicle that Plaintiff would not have leased and/or purchased had Plaintiff known the true facts about the Transmission Defect. Furthermore, Plaintiff unknowingly exposed himself to the risk of liability, accident and injury as a result of Defendant's fraudulent concealment of the Transmission Defect.

<strong>PRAYER</strong>

PLAINTIFF PRAYS for judgment against Defendant as follows:

    a.  For Plaintiff's actual damages in an amount according to proof;

    b.  For restitution;

    c.  For a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c) or (e);

    d.  For any consequential and incidental damages;

    e.  For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil Code section 1794, subdivision (d) and/or (e);

    f.  For prejudgment interest at the legal rate;

    g.  For rescission of the purchase contract and/or restitution of all monies expended;

    h.  Rescission of purchase contract under California Civil Code Section 1692;

    i.  For punitive damages; and

    j.  For such other relief as the Court may deem proper.

STRATEGIC LEGAL PRACTICES, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

19

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a jury trial on all causes of action asserted herein.

Dated: May 1, 2023                    STRATEGIC LEGAL PRACTICES, APC

BY: _____

Tionna Dolin
Daniel Law
Attorney for Plaintiff HUMBERTO SALAS

S ᴛʀᴀᴛᴇɢɪᴄ Lᴇɢᴀʟ Pʀᴀᴄᴛɪᴄᴇs, APC
1840 CENTURY PARK EAST, SUITE 430, LOS ANGELES, CA 90067

20

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Los Angeles, California; my business address is Strategic Legal Practices, A Professional Corporation at 1888 Century Park East, 19th Floor, Los Angeles, California 90067.

On the date below, I served a copy of the foregoing document entitled:

**FIRST AMENDED COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**
on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Los Angeles, California on May 1, 2023.

Miguel Chavez